# IN THE COURT OF APPEALS OF IOWA

No. 21-0223
Filed April 28, 2021

**IN THE INTEREST OF L.D.,**
**Minor Child,**

**R.M., Mother,**
        Appellant,

**L.D., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Osceola County, David C. Larson, District Associate Judge.

A mother and a father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Tisha M. Halverson of Klay, Veldhuizen, Bindner, De Jong & Halverson, P.L.C., Paullina, for appellant mother.

Elizabeth K. Johnson, Spirit Lake, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Shannon Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian ad litem for minor child.

Kevin J. Huyser, Orange City, for intervenor grandmother.

Considered by Bower, C.J., and Doyle and Mullins, JJ.

**BOWER, Chief Judge.**

A mother and a father separately appeal the termination of their parental rights to L.D., born in April 2017. Because there is clear and convincing evidence the child cannot be returned to the parents at present, termination was proper under Iowa Code section 232.116(1)(h) (2020). We reject the parents' claims reasonable efforts toward reunification were not made. Moreover, an extension of time to seek reunification is not warranted here and, in light of the lack of progress in the parents' substance-abuse issues, termination is in the child's best interests. We therefore affirm on both appeals.

**I. Background Facts.**

On December 24, 2019, a search warrant was executed at the family's home, and police found drugs, guns, and unsafe conditions. The father was arrested, and a child-abuse assessment was ordered. Child abuse was subsequently founded against each parent for denial of critical care, presence of illegal drugs in the child, and dangerous substances. L.D. was voluntarily placed with maternal grandparents. Hair-stat testing of the parents and two-year-old L.D. were all positive for methamphetamine. As a result of the search warrant, the parents were each charged with possession of methamphetamine and child endangerment.

On January 20, 2020, the department of human services (DHS) attempted to conduct a walkthrough of the family home, but the parents denied the request. The paternal grandmother picked up L.D. for a visit in January and then refused to return L.D. to the maternal grandparents, asserting the child was ill and the father had granted her a power of attorney.

On January 27, DHS sought an emergency removal, asserting in part:

> During the [child-abuse] assessment [L.D.] was placed voluntarily at [maternal grandmother's home]. . . . In this home [L.D.] was able to have visits with his siblings, see his parents and has established a routine. [L.D.] has been observed to be delayed in the areas of speech and socialization, and thus recommendations for AEA further assessment needed. This has not been able to be completed as [the father and mother] are not cooperating with releases to allow the service to take place.
> Additionally during the assessment [DHS] has been in contact with other extended family members and met with [paternal grandmother]. [Paternal grandmother] and the members of her home were provided with . . . forms that were then turned in for background checks. It was explained to [paternal grandmother] that receiving results would take some time but additionally conversations about setting limits, following expectations and services needing to come to her home and meet with [L.D.] would be required. At this time [paternal grandmother] is not wanting anyone to come into her home. [Paternal grandmother] shared that Scott—[her] boyfriend in home—would have some legal issues that would show up from years back and [her] adopted son [] would have charges from a few years back regarding substances.
> On [January 24, 2020] the Department and [D.] family set up a weekend visit for [paternal grandmother] to supervise a late Christmas gathering. Expectations were clearly outlined for [paternal grandmother] as to pick up on [January 24] and to drop off on [January 26]. As of [January 27] [paternal grandmother] has refused to return [L.D.] to his maternal grandmother's home. This choice demonstrates that [paternal grandmother] is not willing/wanting or able to follow expectations and set limits in order to establish a safe environment for [L.D.].

The juvenile court entered a removal order, placing L.D. in the legal custody of DHS for relative or foster care placement. The child was moved to the paternal uncle's home on February 14.

A February child-in-need-of-assistance (CINA) hearing was continued. On March 24, the parents stipulated L.D. was a CINA pursuant to Iowa Code section 232.2(6)(c)(2) (child whose parent does not exercise reasonable supervision), (n) (child whose parent's drug abuse results in child not receiving adequate care), (o)

(presence of illegal drug in child's body), and (p) (child whose parent possesses dangerous substance in child's presence). The child remained in out-of-home placement.

After an April 24 dispositional hearing, custody of the child was ordered to remain with DHS for placement with a relative or, if a suitable relative approved by DHS was not available, then the child would be placed in foster family care. Supervised visits were ordered. The parents were ordered to participate in substance-abuse treatment; complete mental-health evaluations; participate in random drug testing; cooperate with Family Safety, Risk, and Permanency Services (FSRP); participate in family team meetings; and follow the case plan.

Over the summer, the parents' substance-abuse treatment provider reported both parents had been discharged for noncompliance. The father had not reported to the provider since June 25. As for the mother, a July 14 email stated, "She was last seen on [May 11,] 2020. She was to come to the office to do a drug test on [May 18,] 2020, she never showed and never rescheduled. In a week she will be formally discharged for noncompliance."

Due to the parents' lack of compliance with drug testing, substance-abuse treatment, and mental-health treatment, the State filed a petition to terminate the parents' rights on July 15.

The mother pleaded guilty to child endangerment on June 29, and on July 1, judgment was entered on that conviction.[1] The father entered into a plea

---

[1] The mother was ordered to pay a fine and surcharge and was sentenced to ninety days in jail with all but ten days suspended.

agreement on August 11 in which he would plead guilty to child endangerment and possession of a controlled substance and other charges would be dropped.[2]

On August 14, DHS arrived at the family home for a scheduled walkthrough. The father stated the electricity had been shut off and denied the walkthrough request. Additional requests for a walkthrough were made via email and texts. The parents were nonresponsive.

On August 18, the paternal grandmother filed a motion to intervene in the CINA and termination proceedings. After a hearing, the juvenile court granted the motion to intervene.

The termination hearing was held on September 9 and November 9, 2020. In between the two hearing dates, on October 7, the mother refused to submit to a drug test and admitted to using methamphetamine within the past week. The father was in jail from October 1 to October 12. After being released, he moved in with his new girlfriend. On October 17, the father submitted to his first drug testing since January 2020, and his hair and a sweat patch both tested positive for methamphetamine. He refused further testing when requested.

The mother did not appear at the November 9 hearing. The father testified he had been sober since October 2020, had recently started to engage in substance-abuse treatment, and had scheduled a mental-health evaluation. He asked for an additional six months to seek reunification. On cross-examination, when asked why it took him so long to cooperate with drug testing he responded,

---

[2] The judgment entered on the plea is not included in the record.

"I was an addict before." He denied receiving a text message the previous day to drug test.

The paternal grandmother testified she was willing to provide care for L.D. if an extension were granted or if appointed as guardian. If the court terminated the parents' rights, she wished to be considered for permanent placement.

On February 3, 2021, the court entered its ruling, finding DHS had made reasonable reunification efforts, an extension of time was not warranted, and the establishment of a guardianship or other permissive exception to termination was not in the child's best interests. The juvenile court terminated both parents' parental rights pursuant to Iowa Code section 232.116(1)(e) and (h). The court recommended those involved in the adoption decision consider the paternal grandmother as a proper placement.

The parents separately appeal. Both contest whether grounds for termination have been proved by clear and convincing evidence. Both assert the State failed to make reasonable efforts to reunify this family. Both claim the close bond they have with their child weighs against terminating their rights. And both argue the child should be placed with the paternal grandmother and they should be granted an extension of time to achieve reunification.

**II. Scope and Standard of Review.**

Our review of termination proceedings is de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021). "While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility. '[O]ur fundamental concern' on review 'is the child's best interests.'" *Id.* (alteration in original) (citations omitted).

**III. Discussion.**

    *A. Grounds for termination exist.* Under Iowa Code section 232.116(1)(h), a parent's rights may be terminated if the court finds: (1) the child is three years of age or younger, (2) the child has been adjudicated a CINA, (3) the child has been removed from the physical custody of the parent for six of the last twelve months, and (4) there is clear and convincing evidence that the child cannot be returned to the parent's custody as provided in Iowa Code section 232.102 at the present time. There is no question the child meets the first three requirements. The parents contend the State failed only to prove the child cannot be returned to the parents' custody at the present time. Section 232.116(1)(h)'s reference to "the present time" means at the time of termination hearing. *In re A.M.,* 843 N.W.2d 100, 111 (Iowa 2014); *In re D.W.,* 791 N.W.2d 703, 707 (Iowa 2010).

    At the time of the termination hearing, neither parent had provided a clean drug test. DHS had not been able to inspect the family home. Neither parent was employed. And neither parent had addressed their substance-abuse problem and had either recently tested positive for or admitted using methamphetamine.

    We recognize the parents have been fairly consistent in their visits with the child. We also note, however, the parents were consistently late for those visits. DHS offered assistance when the parents asserted transportation difficulties, which the parents' rejected. When viewed in context, the parents' repeated failure to arrive on time for visits, like their failure to seek timely substance-abuse and mental-health services, indicates an inability or unwillingness to make their child a

priority. There is clear and convincing evidence the child cannot be returned to the parents at present and grounds for termination exist.[3]

*B. Reasonable efforts were made.* Both parents contend the State did not do enough to assist in reunification. The father complains the DHS policy about visits being canceled if parents are fifteen minutes late was unreasonable.[4] He also claims DHS made the "entire process adversarial." The record does not support the father's assertions.

The mother asserts the parents "continuously asked that the child be placed with paternal grandmother." We find no such request was made to the juvenile court. There is an August 19 motion for additional services filed by the father noting DHS no longer contracted with a FSRP provider in the immediate area and asking DHS "facilitate visits at his home," his mother "be authorized to supervise visits," and for additional visits. When asked at the termination hearing what additional services the father needed, he responded "to get a straight answer."

In evaluating claims DHS failed to provide reasonable efforts, we look to "the services provided by the state and the response by [the parent], not on services [the parent] now claims the DHS failed to provide." *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). In this case, DHS provided the family with many services including parenting education, substance-abuse treatment, drug testing, relative

---

[3] Because we find termination supported under section 232.116(1)(h), we need not address whether other grounds were proved. *See D.W.*, 791 N.W.2d at 707 ("[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence.").

[4] This policy was clearly stated from the outset. Children are transported for visits and kept waiting. Care providers have schedules they must keep. And the parents signed an agreement to abide by the written visitation policy. It is not unreasonable to expect a parent to abide by their agreement and the scheduled visits.

placement, and supervised visitation. DHS provided referrals for mental-health evaluations. When in-person services were temporarily suspended due to COVID-19, FSRP providers assisted the parents with accessing remote services so visits could continue. The parents were encouraged to engage in telehealth services. The juvenile court found the services offered were reasonable. We agree.

While the parents complain the child's placement was not convenient for them, L.D. was in a relative placement and near half-siblings. DHS offered to provide gas vouchers to the parents and budgeting assistance. The father declined. L.D. was placed in the paternal uncle's care, which was originally a concurrent plan. In August, this concurrent plan was no longer viable, but DHS decided it was in L.D.'s best interests to remain in his stable placement without additional moves until a final, permanent placement decision could be made. We conclude reasonable efforts were made.

*C. An extension of time is not warranted.* Both parents seek a six-month extension of time. *See* Iowa Code § 232.104(2)(b) (stating the court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). The juvenile court enumerated specific actions the parents were expected to take in its dispositional order in April. In November, the father admitted he "was an addict before." He testified he had no concerns about his substance abuse. We do. The father's eleventh-hour admission of addiction and plans to address his substance-abuse and mental-health issues do not inspire confidence he will be able to safely parent

the child within a reasonable time. *See C.B.*, 611 N.W.2d at 495 ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting.").

And with regard to the mother, she did not attend the November 9 hearing, had yet to submit to drug testing, had not completed parenting classes as directed, had been unsuccessfully discharged from drug treatment in June and had not attempted further treatment, and had failed to follow through with mental-health treatment.

We are mindful the "legislature has established a limited time frame for parents to demonstrate their ability to be parents." *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) (citation omitted). "These deadlines stem in large part from mandates in federal law." *In re Z.P.*, 948 N.W.2d 518, 524 (Iowa 2020). "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *C.B.*, 611 N.W.2d at 495. Here, the parents received more than the time allotted by the statute. *See A.B.*, 956 N.W.2d at 169. It is not in this young child's best interests to require he continue in limbo waiting for his parents to address their substance-abuse issues. *See Z.P.*, 948 N.W.2d at 524.

*D. No permissive exception weighs against termination.* The mother asserts termination should be avoided due to the closeness of her bond with the child. The father also maintains his bond with the child weighs against termination. The juvenile court may forgo termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). Section 232.116(3) exceptions are permissive, not mandatory. *A.S.*, 906 N.W.2d at 475.

"[T]he parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3)." *Id.* at 476. The parents have failed to meet their burden here.

We acknowledge the record shows a bond exists between parents and child. Yet, DHS and the child's guardian ad litem recommend termination, noting the child's need for stability and permanency. We decline to apply section 232.116(3)(c).

The father also claims placement with a relative would avoid the need for termination. There is an exception when a relative has "legal custody." Iowa Code § 232.116(3)(a). Here, DHS had legal custody and the exception is inapplicable. *A.B.*, 956 N.W.2d at 170.

The father contends the court should establish a guardianship with his mother as guardian of the child. Guardianship, especially in the case of young children such as L.D. "is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (citation omitted). The child—who is now almost four years old—has been out of his parents' custody since December 2019. He deserves a stable life with an adoptive family. The child's grandparents or other relatives may seek to adopt the child. DHS will determine the appropriate adoptive parents. *See id.* at 478.

**AFFIRMED ON BOTH APPEALS.**